RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
ALEXANDRIA, LOUISIANA
DATE 2/14/12
BY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JAMES EDISON VISCARDIS | CIVIL ACTION NO. 09-1653 |
| -vs- | JUDGE DRELL |
| LYNN COOPER, et al. | MAGISTRATE JUDGE KIRK |

## RULING

Before the Court is a Motion for Summary Judgment filed by the remaining Defendants, Lynn Cooper (Warden), Gary G. Gremillion (Deputy Warden), and Sgt. Voinche, in their individual capacities.[1] (Document No. 26.) Plaintiff has opposed the motion, and the Court finds no need to hold oral argument. For the reasons set forth herein, the motion will be granted, and Plaintiff's claims arising under federal law will be dismissed with prejudice. Plaintiff's claims sounding in tort under Louisiana law will be dismissed without prejudice.

### I. Procedural Background

James Edison Viscardis, then an inmate at Avoyelles Correctional Center ("AVC")[2], filed a Complaint on September 21, 2009, contending he was injured on October 2, 2008 when he slipped and fell in water that was leaking from the ceiling of

---

[1] Plaintiff's claims against the State of Louisiana through the Department of Public Safety & Corrections and Defendants Cooper, Gremillion, and Voinche in their official capacities were dismissed with prejudice by Ruling and Order dated March 30, 2011. (Document No. 25.) All claims against the fictitious defendant, "XYZ Insurance Company," were dismissed by Order dated February 8, 2012. (Document No. 40.)

[2] Plaintiff was released in November 2009.

the AVC Education Building. Plaintiff alleges the roof was damaged in August 2008 during Hurricane Gustav, and, although the Education Building was closed for a short time following the storm, the condition was not repaired. Instead, a trash can was placed under the leak to catch the water. Plaintiff further asserts he sustained injuries to his arm, back, and hip in the fall, but he was not given appropriate medical care. (Document No. 1.)

The Complaint sets forth the following causes of action: (1) a claim under 42 U.S.C. § 1983 for unconstitutional conditions of confinement; (2) a claim under § 1983 for failure to provide adequate medical care; (3) a claim under § 1983 that Plaintiff was denied his constitutional right to due process, because AVC did not have a meaningful system for dealing with prisoners' complaints of staff misconduct; and (4) claims under various provisions of Louisiana law.

In addition to his prayer for damages, Plaintiff asks the Court to issue the following orders: (1) "enjoining defendants from engaging in any of the unlawful acts, omissions, or practices complained of;" and (2) "declaring that the defendants have acted in violation of the United States Constitution." (Document No. 1, p. 9.)

Defendants deny Plaintiff's claims and assert multiple affirmative defenses, including Plaintiff's fault and qualified immunity. (Document Nos. 5 and 24.)

## II. Law and Analysis

A. *Summary Judgment Standard*

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

2

matter of law." Fed. R. Civ. P. 56(a). Although Rule 56 was amended effective December 1, 2010, the amendment "contains no substantive change to the standard." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680, n.8 (5th Cir. 2011). An issue as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider all "evidence in the light most favorable to the party resisting the motion." Trevino v. Celanese Corp., 701 F.2d 397, 407 (5th Cir. 1983).

The moving party bears the initial burden in summary judgment and must demonstrate that no genuine issue of material fact exists. Once the moving party has successfully demonstrated the absence of a genuine issue of material fact, the burden shifts to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-moving party may not merely rely on the allegations and conclusions contained within the pleadings; rather, he "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech Univ., 80 F.3d 1042, 1047 (5th Cir.1996). Furthermore, these specific facts must be shown through something more than "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Little v. Liquid Air. Corp., 37 F.3d 1069, 1075 (5th Cir.1994) (internal citations and quotations omitted).

B. *42 U.S.C. § 1983*

42 U.S.C. § 1983, the basis for Plaintiff's federal claims, provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any

> citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a viable claim under § 1983, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." James v. Tex. Collin County, 535 F.3d 365, 373 (5th Cir. 2008) (internal citations and quotations omitted).

*1. Conditions of Confinement*

In their Statement of Uncontested Facts, Defendants admit, "[t]he water that was on the floor at the time of the fall was a result of a roof leak caused by Hurricane Gustav." (Document No. 26-2.) They contend, however, there was nothing to prevent Plaintiff from observing the water, and they had no knowledge of the leak before Plaintiff allegedly fell. In his opposition memorandum, Viscardis disagrees and asserts that when Sgt. Voinche was made aware of the fall, he said, "now maybe they will fix the . . . leak because it has been like that for months." (Document No. 31.)[3]

It is well settled that negligence on the part of jail officials does not give rise to civil rights claims. See Daniels v. Williams, 474 U.S. 327, 333 (1986); Simmons v. Poppell, 837 F.2d 1243, 1244 (5th Cir.1988). In Daniels, the Supreme Court held that a prisoner's claim he was injured when he slipped and fell on a pillow a jailer left on the floor might support a state tort claim for negligence but did not amount to a civil rights violation

---

[3] In his deposition, Viscardis testified Sgt. Voinche's words were, "maybe they'll fix the . . . thing now." (Document No. 26, Ex. 1, p. 88.)

under § 1983. The Fifth Circuit has repeatedly found that claims involving a prisoner slipping and falling do not equate to a constitutional deprivation. See Marsh v. Jones, 53 F.3d 707, 712 (5th Cir.1995) (inmate who slipped in water from a leak or a sweating air conditioning unit did not present a claim actionable under § 1983); Benton v. Grant, 31 Fed. Appx. 160 (5th Cir. 2001) (unpublished) (no remedy under § 1983 for injuries sustained in a jail slip and fall or for a claim that defendants knew of a ceiling leak but did not repair it).

Applying these standards to the instant case, we find Mr. Viscardis's allegations that he slipped and fell in water leaking from the ceiling in the AVC Education Building do not rise to the level of a constitutional deprivation concerning Plaintiff's conditions of confinement. Therefore, Defendants' motion for summary judgment on this point will be granted.

*2. Medical Treatment*

Plaintiff also contends his constitutional right to be free from cruel and unusual punishment under the Eighth Amendment was violated, because he was not given adequate medical attention following the accident.

In support of their motion for summary judgment, Defendants have provided medical records from AVC (Document No. 26, Ex. 5)[4] showing Plaintiff was seen on an emergency basis immediately after the fall on October 2, 2008 with complaints of pain and redness to his right elbow and lower back. A "raised area [the] size of a pickle" was observed on Plaintiff's arm, and redness was noted on his low back, with no bleeding

---

[4] Unless otherwise indicated, all references to medical records herein are to documents included in Exhibit 5.

5

or swelling. (Id. at p. LDOC 018.) He was able to flex and extend his right arm, and his ability to bend his back was unlimited. Plaintiff was given a dose of Motrin, a pass to obtain a bottle of Motrin from the canteen, and an appointment with the doctor for later in the day. Records from the second visit note Plaintiff was complaining of pain in his lower back and right groin. Some redness and scratches were observed on Plaintiff's back, but there was no drainage and no sign of infection. He was given additional pain medication and told to apply ice to the affected area.

Plaintiff was seen again the following day with complaints of pain to the lower back when he coughed, which problem he related to a possible "pulled muscle" suffered in the fall. Examination revealed a full range of motion, no swelling, and only a small bruised area to the right elbow. Plaintiff was instructed to continue taking Motrin and Robitussin.

Plaintiff returned three days later, on October 6, at which time he complained of decreased range of motion and pain in his lower back. X-rays of his right elbow were normal, and X-rays of his lower back revealed exaggerated lumbar lordosis and spondylolysis at L5-S1, with no spondylolisthesis. Plaintiff was given Tylenol for pain, his duty status was restricted, and he was told to return in ten days.

Two days later, on October 8, 2008, Plaintiff reported low back pain and uncontrollable urination. A urinalysis was ordered, and Plaintiff was instructed not to drink as much coffee. When he was seen again on October 13, Plaintiff noted increased pain in his lower back and said the Tylenol was not helping. Therefore, he was given Motrin and the analgesic balm he requested.

During Plaintiff's October 15 sick call, he stated he had been using a wheelchair secondary to back pain. He then followed up with the physician on October 20, at which time Plaintiff said he had urinated on himself multiple times and was walking with a limp. The pain medication was increased, and Plaintiff was referred to LSU Health Sciences Center in Shreveport, where he was seen on October 21. X-rays taken at that institution of Plaintiff's right hip and lower back were negative for fracture or abnormality. A scrotal doppler examination was also performed and was interpreted as normal. Plaintiff was diagnosed as having a contusion to his hip and back, a lumbar strain, and urinary frequency. He was prescribed Naproxen for pain and was given discharge instructions pertinent to his condition.

The medical records show Plaintiff continued to be seen regularly in the clinic at AVC through December 17, 2008, during which time he complained of continued back pain, urinary difficulties, and hip pain/dislocation. He was given pain medication, balm for muscle spasms, and crutches. On December 19, Plaintiff was referred to Huey P. Long Medical Center, where an MRI of his right hip was performed, he was given medication, and he was told to return for the results of the MRI. In the interim, Plaintiff was evaluated at the AVC clinic several more times, where his medications and restricted duty status were continued. Records from Huey P. Long Medical Center dated February 2, 2009, reveal the MRI of Plaintiff's right hip was normal.

Plaintiff continued to visit the AVC clinic regularly through October 2009 for multiple complaints including dandruff, a "runny nose," foot pain, sunburn, back pain, hip pain, leg swelling, tooth pain, and a difference in leg lengths. He was given various

7

medications and treatments, such as a cane, a knee brace, and referrals to a podiatrist and dentist. He also returned to Huey P. Long Medical Center on March 3, June 12, and July 10, 2009. The physicians recommended a shoe insert, which was provided in April. Additional x-rays, all read as negative, were performed in June, and Plaintiff was noted to be "doing well" in July. (See also Document No. 26, Exs. 6 - 7.)

In his opposition to the summary judgment motion, Plaintiff does not point to any evidence that his medical care was improper. Instead, he simply "contests" Defendants' assertions in their "Statement of Uncontested Facts" regarding the adequacy of Plaintiff's treatment. (Document No. 31.)

To state a claim for unconstitutional denial of medical attention, a prisoner must show that the medical care was denied or delayed and that the denial or delay amounted to deliberate indifference to his serious medical needs. Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991). A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). A "plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (internal quotation marks and citation omitted). Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

This Court has thoroughly reviewed the medical records and finds absolutely no evidence that Defendants acted with deliberate indifference to Plaintiff's serious medical needs. Rather, it appears Plaintiff's complaints were addressed appropriately under the circumstances. Therefore, Defendants' motion for summary judgment on this issue will be granted.

*3. Failure to Provide a System for Redress of Grievances*

As noted above, Plaintiff also contends his right to due process of law was violated, because Defendants "[f]ail[ed] to establish and/or assure the functioning of a bona fide and meaningful department system for dealing with complaints of police misconduct." (Document No. 1, p. 6.)

In support of their motion, Defendants have provided copies of three separate grievances regarding medical treatment Plaintiff submitted through the facility's administrative remedy procedure. (Document No. 26, Ex. 5, pp. LDOC 024-025, 053, and 150-152.) The records also show Plaintiff received written responses to his complaints (Id. at pp. LDOC 068 and 160-161). Plaintiff presents no evidence to dispute the authenticity of these filings.

The Fifth Circuit has found that a prisoner has no federally protected liberty interest in having administrative grievances resolved to his satisfaction. Therefore, no due process violation can flow from "a legally nonexistent interest." Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005). Even if such an interest did exist, however, we find no evidence that the administrative remedy procedure at AVC performed inadequately in Plaintiff's case. He was able to use the procedure on multiple occasions with no

9

apparent difficulty. Accordingly, Defendants' motion for summary judgment on this issue is well-taken and will be granted.

C. *Declaratory/Injunctive Relief*

Considering the findings above that Plaintiff has shown no constitutional violations, his prayer we "declar[e] that the defendants have acted in violation of the United States Constitution" (Document No. 1, p. 9) will, likewise, be denied.

As to his request Defendants be enjoined "from engaging in any of the unlawful acts, omissions, or practices complained of" (id.), the jurisprudence is clear that in order to obtain the "extraordinary remedy" of injunctive relief, a plaintiff must show, among other things, a substantial threat he will suffer irreparable injury if the requested injunction is not granted. Byrum v. Landreth, 566 F.3d 442, 445 (5th Cir. 2009). The availability of money damages generally defeats a claim of irreparable injury. Foy v. University of Texas, 146 F.3d 867 (5th Cir. 1998).

A review of the record shows Plaintiff, who is no longer housed at AVC, is under no threat of irreparable harm sufficient to support injunctive relief, and his request for same will be denied.

D. *State Law Claims*

Our original subject matter jurisdiction over Plaintiff's Complaint is based on 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights). There is no diversity of citizenship. Jurisdiction over the state law claims would be based only on 28 U.S.C. § 1367(a), which allows the district court to exercise supplemental jurisdiction over claims that form a part of the same case or controversy as the underlying federal claims.

Since this Ruling will dismiss all the pending federal law claims, we have discretion whether to retain the state law claims. In deciding how to exercise such discretion, we should consider the statutory factors set forth in 28 U.S.C. § 1367(c), which provides:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if --
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The general rule is that a court should decline to exercise jurisdiction over remaining state claims when all federal claims are eliminated before trial. However, this rule is neither mandatory nor absolute, no single factor is dispositive, and our decision should be made in light of the specific circumstances of the case before us. In addition to these statutory considerations, the jurisprudence instructs us to balance the common law elements of judicial economy, convenience, fairness, and comity. See Batiste v. Island Records Inc., 179 F.3d 217, 227 (5th Cir. 1999).

Applying these factors, we note that although this case is a little more than two years old, it remains at a relatively early stage in the litigation. No trial date has been set, and the parties have asked for a continuance of the scheduled pretrial conference. The amount of time the Court has expended reviewing this case has centered on the

constitutional claims, not on the state law issues. While it is true the questions of Louisiana law do not appear to be novel or complicated, if Plaintiff chooses to pursue this case, trying such issues in state court will not impose any significant burdens on the parties such as repeating discovery or relitigating procedural decisions.

We are certainly mindful, regarding convenience and fairness, that declining to hear state law claims where prescription is an issue could be detrimental to Plaintiff. However, in the instant case, this consideration is not determinative. Plaintiff is represented by competent and able counsel who can facilitate timely refiling within the remaining prescriptive period, which arguably consists of at least ten (10) days, if he should choose to do so.

Therefore, we will dismiss the remaining state law claims without prejudice.

### III. Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment (Document No. 26) is GRANTED, such that all Plaintiff's claims arising under federal law, including his requests for declaratory and injunctive relief, are DISMISSED WITH PREJUDICE, and Plaintiff's claims sounding in tort under Louisiana law are DISMISSED WITHOUT PREJUDICE.

Additionally, as a result of this determination, Defendants "Motion to Continue and Re-Fix Pretrial Conference" (Document No. 39) is DENIED AS MOOT, and the pretrial conference, currently scheduled for February 16, 2012, is CANCELLED.

SIGNED on this 14 day of February, 2012 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE